We will hear argument first this morning in Case 21-1158, Percoco v. United States. Mr. Roth. Mr. Chief Justice, and may it please the Court, bribery presupposes an agent who exercises some authority on behalf of a principal. The agent is forbidden to trade that power for private gain. A public official is an agent of the public and therefore violates the bribery laws if he sells his official authority. This concept is fundamentally inapplicable to someone who is not a public official, someone who is not an agent of the public and has no official authority to sell. At all relevant times, Petitioner here was a private citizen. He took no oath of public office. He received no salary from the public fisc. He possessed no legal authority to bind the state or make decisions for it. What he did have, like many lobbyists and donors and interest groups and others, was influence. In his case, influence drawn from years of public service, from a close relationship to the Cuomo family, and from his senior campaign role. But none of that creates a fiduciary duty to the public. None of it entrusts official power to exercise on the public's behalf. And so none of it can be the predicate for a bribery conviction. By trying to stretch Section 1346 to prohibit the sale of influence, the government also contradicts this court's decision in skilling, which saved the statute from a due process challenge only by narrowing it to its core and excluding novel outlier theories. And by pressing this influence theory in particular, the government strolls recklessly into a constitutional minefield. Judge Winter was right to call the government's theory a catch-all political crime which has no use but misuse. This court should reject that theory and reverse the decision below. And I welcome the court's questions. Counsel, let's assume that Petitioner did not resign much more than, say, one afternoon and then engaged in this conduct. Do you think you would still be able to make the exact same argument? I don't think it would be the exact same argument, Your Honor, because I think if it were that short a period of time, it's very likely that the government would be able to show that the agreement contemplated the use of official power upon his return to office, right? If he was only out of office for a few hours. Well, couldn't you make that exact same assumption here, even though the period is a bit longer? Well, Your Honor, the most important response to that is that that wasn't the government's theory in this case. That wasn't the theory on which Prococo was tried. It wasn't the theory of the jury instructions. It wasn't the theory the Second Circuit upheld. I think the reason for that is because factually it doesn't really work because the agreement here was reached no later than, everyone agrees, July of 2014. At that point, even Prococo was not anticipating that he would return to public service after the campaign, and there's certainly no evidence in the record to suggest that A.L.O., the person who paid him, believed that he would be returning to public office. In fact, the district court specifically addressed this point at pages 549 to 550 of the J.A. in a post-trial order addressing the Hobbs Act count, and the Court said, well, sure, you could have a theory of Hobbs Act extortion if someone was threatening to use their future powers upon return to office, but that wasn't the theory here, and the evidence doesn't support it in this case. So I don't think that alternative theory that we see in the government's brief can be a basis to affirm this conviction. Kagan. So, Mr. Roth, I understand what you're saying, that the government didn't prove the kind of facts that Justice Thomas was indicating, but you're asking us, the theory of your case is basically as long as he wasn't in public office, you can't charge him under this statute. And I think, you know, if we put aside the facts of this case and test that theory, Justice Thomas' hypothetical, I mean, you can spin lots of different versions on it, you know, up to the point where a public official just, like, resigns his office every time he wants to take a bribe, and then picks up his office again when he's completed the bribe. And there has to be something wrong with that, but your theory would suggest that you can't under this statute. So how are we going to adjust your theory so that you can prosecute that public official under this statute? Right. Your Honor, I think that that doesn't quite capture our theory. Our theory is there needs to be a nexus to official power. That needs to be what the deal contemplates, that you are selling your official power. It can be official power you have right now. It could be official power that you expect to have tomorrow or next week. But the agreement has to call for that use of official power, because that's the basis for the fiduciary relationship. The defendant has to owe a fiduciary duty to the public. He owes that duty when he is exercising some power in a representative capacity. But as I understood your theory, you're suggesting that official power can only arise when he has the formal trappings of an office, when he is being paid by the government. And official power, I'm going to suggest, is a little bit more fluid than that. And in the kind of scheme, which is a scheme of circumvention that I was suggesting, it's like, well, he's not being paid by the government anymore, and he's not formally on the books as a government employee. But everybody knows what's going on here, and that he is exercising official power, even though not tied to an official position. Your Honor, I think you could be exercising official power, number one, as an official, number two, as an employee, number three, and maybe this is what your Honor's question is getting at, as an agent. So you could have, perhaps, a situation where somebody is delegated official power as an employee. But that would still require an agency relationship to exist between the defendant and the State. Mr. Rath, oh, sorry. Go ahead. I thought you were done. I just want to, that's not their theory here. So the government is not making any type of agency argument. In fact, their whole brief in this Court is about how you supposedly don't need an agency relationship. And I would suggest, without an agency relationship, the whole concept of bribery really doesn't make any sense, because you need to be acting in that representative capacity in order for the bribe to have the opportunity to corrupt the principal-agent relationship. That's what corruption is all about. What do you think— Can I just— Oh, sorry. Go ahead. What do you think needs to be shown to establish an agency relationship? Let me give you this example. Suppose there is a situation in which the person who formally holds official power doesn't exercise it, and everybody knows that. So suppose it's a popular governor who cannot run for re-election again, but the spouse of the governor runs. And everybody knows that the former governor is really the one pulling the strings. Everybody knows that. And if anybody asks the person who holds the office as a formal matter, that person will say, don't bother me with this, just ask my spouse. Would that be—would that person be—could that person be convicted under the statute? Your Honor, I think that there's room to have a disagreement about what level of evidence would allow a jury to infer an agency relationship. But maybe on those facts, I think a jury potentially could say, look, in that situation, the spouse has assumed the role of an agent. She understands that. He understands that. Everyone else understands that. And she really is exercising the power as an agent. However, in this case, we know the government cannot be relying on an agency theory because the government had a count that depended on agency. Section 666 on its face says agency, and the jury acquitted Percoco on that count. Well, I understand that, although I don't know whether it's necessary for a jury's verdict on all counts to be consistent, that you have to read them as being consistent. But putting the facts of the case aside, and of course, I know that's what's all important to you, but we need to articulate the correct legal principle. I thought your argument was that we should draw a bright line, either you have the formal power or you don't, you've taken the oath of office, you're in office. If you haven't done that, you can't be convicted. But now you seem to be buying into at least some aspects of the Second Circuit's idea that someone can be functionally an official. Your Honor, I think we've always said official employee or agent. But the key point is that even an agent has been delegated authority to act on behalf of the principal. It may be not through a written contract. It may be not through holding an office. But there is a delegation when you have an agency relationship. And I don't think we've ever suggested that that's not enough. But that's not what the Second Circuit's decision is all about. The Second Circuit's decision is about reliance and control, which is not about delegating power. It's about exercising influence. And that doesn't distinguish a situation like our case from a really influential lobbyist or a top donor. Roberts. I understand, and Justice Alito made the point, you're – you want to win your case, which is good. But is an agency relationship a question, a fact for the jury to determine? Well, Your Honor, under the 666 count, it was put to the jury to determine is there an agency relationship. Of course, as in any case, you could have facts that don't rise to the level of triggering a jury question, and then there would be entitlement to acquittal. But in this case, on these facts, the agency question was put to the jury in the context of Section 666. And you think that – and you think that was appropriate? Well, I – I think – I'm not sure, Your Honor, but given that it was put to the jury and the jury acquitted, I'm not saying that the verdicts necessarily have to be consistent, but I think it does explain why the government is making the argument that it's making here, which is not to say, oh, you can infer an informal agency relationship. Prococo actually held official power that was delegated by the governor. That's not what they're saying. They're saying people in the office listened to him because of his political influence, because of his relationship to the governor, because they cared what he had to say for all those reasons, and that that reliance alone somehow creates a fiduciary duty. But it doesn't, not as a matter of sort of common law background principles. And certainly under Skilling, which said, you know, we're narrowing the statute to the core, to bribery, and to figure out what bribery means, we can look at other Federal bribery statutes, like Section 666, like Section 201. Well, this theory doesn't fit under any of those alternative statutes either. Kagan. Well, just thinking about this kind of case, and, you know, it's a common thing where a very high-level public official goes off the government payroll and on to the campaign payroll, only to come back on again after, one hopes, you know, he hopes the, the public official wins re-election. And so, you know, suppose that there's, you know, an informal, in your words, but clear understanding that even as he goes on to the campaign payroll, he's going to continue to do government functions. So, you know, he's not called the executive secretary anymore, but there's no other case of the governor, and, and you can argue with me on the facts, and you can say that's not this case, you know, all he was doing was he, all the government proved was he did like a few isolated things, but suppose another case, where in fact he's, he's basically now just doing two jobs, what happens there? Your Honor, I think that if the government wanted to prosecute that, those facts, they would have to proceed under an agency theory, and they would have to convince the jury there was an agency relationship formed, and yes, he's not on the books anymore, but he was delegated official power, he's exercising official power, not just that people are listening to him, but they actually understand, and he understands that he is holding this authority as a representative of the public, notwithstanding his title. We'd have to proceed under that sort of agency theory. There aren't a lot of cases like that, and I think it's sort of unusual to find, but, but I think that's how they would have to prosecute it. Now, I understand Your Honor's sort of point about this is common, people go work on that campaign, they come back, and I would suggest that's sort of the perfect situation where you could imagine a state ethics rule that says, if you've left office, and you're a campaign, you're working in a campaign capacity, you know, we're going to have a, some sort of cooling off period, or we're going to have some sort of categorical rule that we don't want you to be involved in advocacy activity or lobbying during that period, because of the perception that you still have residual influence, or something like that. That would be fine, but it's not, it's not bribery. It's not bribery because that person, at least in the absence of an agency relationship, that person doesn't, is not representing anyone else, and doesn't have a fiduciary duty to anyone else, other than his new employer. But we have a statute, 201, that addresses bribery in the Federal context, and you really didn't fit that statute. So can you say more? And in particular, the statute contains a definition of public official that seems to contemplate someone who has been informed that they will be nominated or appointed, but they don't currently hold the position. Right. Sure, Your Honor. Let me actually make two points about section 201. Okay, so first, dealing with the government's principle theory of functional official exercising the functions of the office, they point to Dixon as sort of the, the, the key case under section 201, and I think it's fair to characterize Dixon as sort of the high watermark of section 201. But the facts of Dixon are so dramatically different from this case, and I think it sort of proves our point that section 201 doesn't allow for this theory. Dixon involved a non-profit organization that had been formally delegated the authority to make spending decisions under a federal spending program. And this court said they were, you know, the act vested those, the employees of the non-profit with legal authority to make the decisions. The court emphasized the official nature of their duties. It was indirect, but they were, those individuals were authorized to make those federal spending decisions. So not, not surprising they would be considered public officials. That doesn't get you anywhere close to the reliance and control theory of Margiotta and the decision below. Now, the government also invokes section 201 for their alternative future official theory, which Your Honor's question focused on that language in the statute. And, and we don't have any issue with that either, but as I was saying earlier, if the theory is that you have sold your future powers, because you've been identified as someone who is going to assume office, you haven't done it yet, but you know you're getting that authority in some fixed period of time. The agreement, the bribery agreement then has to contemplate that you are going to use those powers, that official authority for private gain. Why isn't that Justice Kagan's scenario? You know, you just got out of office, you're a part of the campaign to get the official for whom you've been working reelected. And it's sort of the assumption is that you will be returning to the government post, because you're, you know, part of the machinery of getting that person back into office. What, why in that window of time don't we have the future government official scenario? Your Honor, depending on, on the facts, you may well have a scenario that would allow the government to prosecute on that theory. My point is just, you need to have that nexus to the sale of, of future powers. So the agreement itself, the bribery agreement between the person who is temporarily out of office and the payor has to call for, hey, you're going to take office again. When you do, you're going to help me in some fashion or another exercising your official power. Our point is just, that wasn't the theory here, that wasn't the jury instruction here. And factually, it doesn't really make a lot of sense here, because at the time of the agreement, they actually were not anticipating that Prococo would return. He had told people he has to go make money in the private sector, he's not coming back. He later changed his mind. But at the time of the agreement, which is the key moment, remember this is a conspiracy account. So it all comes down to the agreement between Prococo and Aiello. At that moment, neither side was anticipating a return to office. And the key email that actually initiated this arrangement is where Aiello says, you know, can he help us, quote, while he is off the second floor working on the campaign, that's at JA 594. So in fact, the whole point of the deal, as the district court recognized, was that they wanted to use his unofficial influence while he was out of office. Not that they wanted him to help through official channels once he had returned later, which they didn't anticipate at the time. Mr. Roth, can I ask you a question about Justice Kagan's hypothetical about the manipulative public official who goes in and out of office for an afternoon to peddle influence. Could you say in that case, because such manipulation obviously would be a problem, that that is a breach of the duty of honest services to manipulate in that manner? You know, you owe a duty to the public at 8 o'clock that morning when you're a public official. And if you go out of office, you're breaching your duty of honest services because you are doing it to the end of circumventing the prohibition on sale of honest services. And by extension here, there was no fiduciary duty owed because, as you would say, those facts are not present. Your Honor, I would frame it a little differently. To me, the key question is, when that person leaves office and makes some deal, okay, what does the deal call for him to do? If the deal anticipates that he's going back tomorrow, we all know that, and when he goes back, we want him to tell his subordinates, you know, make this decision or hire this person or give this contract, then sure, he- No, he does it in the window. It's not an incoming public official or someone who is going to sell future influence. It's something he does in the present. If it's all happening in a period when he is out of office and holds no official authority, I would resist the idea that that violates this statute. So you're asking for a bright line, even if it leads to the situation Justice Kagan hypothesized? Well, I think in practice, most of the real concern of that hypothetical is the situation where somebody is coming back and is going to be using official power. If what the arrangement calls for is simply the use of unofficial influence during the interregnum, I don't think that's different in a meaningful way from anyone else who might have substantial influence over government decision-making, whether that's, you know, the official's family member or the most important donor to the campaign, and everyone in the office knows, you know, we really need to keep that person happy. I mean, there are all sorts of examples where private citizens are active participants in the political process and have unofficial influence over government decision-making, but that doesn't create a fiduciary duty to the public. Well, I guess I want to explore that just a little bit further. That was one of the criticisms, of course, of the dissent in Skilling, was that if you allow fiduciary duty to do this kind of work, if we write that into the statute, the concept of fiduciary duty or agency is nearly boundless. And so you might have lobbyists who you might say owe fiduciary duty or spouses, to use Justice Alito's example. And I guess I'm wondering what the limiting principle is if it isn't, if we were to reject your bright-line test of selling services while in office, what would you have us do? I mean, is the statute constitutional in those circumstances, or is there some constitutional applications we could still save, or what? Well, Your Honor, I think that the way Skilling intended to address that problem was to say, look, in most core bribery cases, we're dealing with a fixed set of fiduciary obligations that are known. I accept that, right? I think Skilling took the core and tried to preserve it, and that might be the in-office argument. Your bright line, I understand that. But if the court were to go beyond that, is there any stopping point? Does this statute cover all lobbying, potentially? Well, Your Honor, I think that is the problem with the Second Circuit's approach, and with reading sort of the idea of fiduciary very broadly, is, you know, where does it end? And I haven't seen a good explanation for why the government's theory here and the Margiotta theory would not cover the really influential lobbyist, maybe somebody who used to be chief of staff in the office, has left, still knows everybody there, still can pick up the phone and get things done, as they said about Percoco. You know, why would that not be enough? And I think that's a major problem. It's a problem from a due process standpoint, because of the indeterminacy. And it's a problem from a First Amendment standpoint, because lobbying is constitutionally protected conduct. We're talking about petitioning the government for redress of grievances. And when you're chilling that type of conduct, that's a major problem. Well, now you're back to the argument I thought you were going to make when you stood up. And you've marched away from the concession that there could be somebody who could be convicted based on a theory of agency. But, Your Honor, I don't think agency presents the same concerns. First of all, we have a long history and well-established rules about what constitutes an agency relationship. Number two, we have Section 666, which already embraces the agency line. And we haven't really seen, I would say, these kind of problems with that. I think agency is a meaningful constraint. Everyone understands an agent owes fiduciary duties to a principal. Once you get beyond that, though, then we start to worry, I think, about the lack of limiting principle. Okay. Well, if an agency relationship is enough and you don't need a formal contract delegating authority to the agent, I guess the next step is that it's possible to infer from circumstances the behavior of the parties that this individual is, in fact, an agent of the officeholder, right? Yes. You could imagine a situation where it's inferred. And, again, we can have a discussion about how much evidence is enough to allow the jury to draw that conclusion and draw that inference. We don't have to do that in this case because that's not their theory. And I think we've talked about why that's not their theory because of the adverse jury verdict on Section 666. Well, I don't know about the adverse jury verdict because if the question is the sufficiency of the evidence, if the evidence is sufficient to establish an agency relationship, then the fact that the jury found no agency relationship under another count, that doesn't matter, right? Fair enough, Your Honor. But that still leaves the point that they haven't argued that. And, again, if you go through their brief and do a search for the word agency, it comes up a bunch of times where they say, you don't need to have an agency relationship. You don't need to have. So that's their test. That test is wrong. If that test is wrong, count 10 has to be reversed. And whether an agency theory would work in some other cases is really not before the court at this point. Two questions. This does sound to me like 201, which is what Justice Jackson said. If we have in other situations, including in Dixon and not in Dixon, in Skilling, I believe it was Skilling, said that we borrow from the concepts of 201. So that's what you're doing here, correct? I think we're borrowing from both 666 and 201, at least to the extent that they overlap. But I would say- Basically, you accept that you can be either an agent or have been formally delegated authority from the government, correct? Yes. And you accept the future public official, meaning you don't have to be an official today as long as you're taking money to perform an act in the future. Correct, Your Honor. All right. Having said all of that, I'm sorry. No, go ahead. What if we agree with you? And I think the government has agreed that the instruction here, based on Second Circuit case law, was wrong. Okay? Do we vacate? Do we reverse and order judgment for your client? Or do we remand to let the court below decide whether they get a second bite at the apple? Or what do we do? That's a good question, Your Honor. I think on count 10, the right course is to reverse and direct acquittal, because the only argument they've made on count 10 is to defend the Second Circuit's theory, and that doesn't work. I think with respect to the other counts, that's an issue for remand, because we do have concerns about spillover from count 10. And so I think there, it would be remanded to the Second Circuit to take a closer look at the impact on those counts. That would be what I would suggest. Well, they are not defending Margiotta. They're defending a different theory. They say they're not defending- So I'm a little confused. Sorry. They say they're not defending Margiotta. I'm not sure what the difference is between what they're saying, functional official, and Margiotta. They sound the same to me. I haven't been able to figure out the difference. So I think that theory doesn't work. You're right, Your Honor. They do talk about the future official theory, but the district court's already rejected that. Again, if you look at pages 549 to 550, the district court's already said that theory doesn't work. It wasn't the theory he was tried on. It wasn't the theory supported by the evidence. So I don't think that theory would warrant a remand for a new trial, because I don't think it's been properly preserved or supported by the evidence, as the district court's already explained. Thank you. Thank you, counsel. Thank you. Justice Thomas? Justice Alito, anything further? Justice Barrett? Justice Jackson, anything further? Thank you. Thank you, counsel. Ms. Reeves? Mr. Chief Justice, and may it please the Court, petitioner's theory of this case would require this court to reverse course in numerous ways. He would limit Dixon in a manner unsupported by that decision or the text of Section 201. He would have this court backtrack from Skilling's instruction to look at Section 666 and Section 201 when interpreting the honest services fraud statute. And he would have this court limit prosecutions that Congress intended to cover when it adopted Section 1346. In that provision, Congress reinstated the honest services fraud doctrine that had developed before McNally. McNally itself noted that the doctrine provided that an individual without formal office may be held to be a public fiduciary if others rely on him because of a special relationship with the government, and he in fact makes governmental decisions. But perhaps most troubling, petitioner's approach, at least as laid out in his briefing, would permit individuals who function as government officials to accept bribes and kickbacks. His rule would allow an individual to formally leave government for a single day, accept a bribe in exchange for ordering government employees to take official action, and return to formal employment without penalty. His rule would also allow someone nominated to a cabinet position to accept a bribe in exchange for instructing the agency he is about to lead to withdraw pending regulations. And his rule would likewise permit petitioner's conduct. Although petitioner asserts that his conviction is solely premised on him being an influential lobbyist, that argument is based on a caricature of both the government's proposed legal framework and the facts of this case. While functioning as a government official, and after he had decided to return to formal government employment, petitioner accepted multiple bribes in exchange for commanding a government agency to reverse a final decision. The relevant agreement occurred after August 6th, which was the time that petitioner indicated that he was returning to government. That was a violation of his duty of honest services, as this court has always understood that duty. I welcome the court's questions. Counsel, what is curious about this case is that the state of New York doesn't seem to be upset about this arrangement. Justice Thomas, I'm not sure that the fact that New York hasn't prosecuted him, particularly when there has been a federal prosecution, suggests that the state of New York finds any problem with what he did. And as indicated in our brief, New York public law appears in two different places, both its ethics law and its public servant law, appears to prohibit petitioner's conduct. Its bribery statute closely tracks the language of section 201, which indicates that he did commit bribery under state law as well, even if the state decided not to prosecute him. But doesn't that work against you? It suggests that if New York actually wanted to prosecute this activity, it had the authority to do so and the statutory basis for it. That a state could prosecute someone for a federal crime doesn't suggest that the federal statute is valid. I don't think that's the problem that I'm pointing to. Rather that it's rather odd that this broad federal prosecution is taking place under what some have termed a catch all provision. Is being used rather than the specific state law that you suggested. Again, I don't think that this court has ever suggested that the existence of potentially overlapping federal and state statutes, even if one is broader than the other, means that we shouldn't, that the court shouldn't interpret the federal statute to the full extent that it suggests. I think my point is rather that it seems as though we are using a federal law to impose ethical standards on state activity. I think that was always part of what section 1346 was intended to cover. The development of the Honest Services Fraud Doctrine started in the 1940s, and this court stopped that with McNally in the 1980s, and Congress reinstated that doctrine by using this text. And as this court noted in Skilling, most of the prosecutions that occurred under the pre-McNally theory were of public officials. So you don't- But isn't it curious under that, could you give me the specific elements of a violation of 1346? The individual needs to have engaged in a scheme to violate fiduciary or honest services duties. The individual also needs to have had the appropriate mens rea, which is knowledge, willfulness, and a specific intent to defraud. The deception needs to have involved a material fact, and the mails or interstate wires need to have been used in furtherance of the fraud. So now, let's just take one of those and now stop. But let's just take fiduciary duty. So how do you determine the contours of that? Usually in a civil context, you have a trust agreement, you have common law, you have some basis for determining who is covered by fiduciary duties and what the contours of those duties are. How do we determine that in this case? The court has indicated in cases like Skilling that the appropriate way to do that is to look at the body of pre-McNally case law, and to also look at federal statutes defining similar duties, and here that would be section 201 and section 666. And because petitioner's conduct is clearly covered at least by section 201, this case doesn't implicate sort of the outer bounds of potential fiduciary duties or other duties that might trigger an honest services fraud prosecution. Counsel, at the beginning of your summary of argument, you say that the petitioner is covered by 1346 because he accepted bribes as a former, future, and functional public official. But under your theory, I gather it doesn't matter whether he was either former or future, right? It's just a question of functional status in the abstract. The primary theory in this case has always been the functional status. And here I think the facts that he was formerly and about to become also support that. Right, right, I understand that. But you would not suggest that the coverage under 1346 depends upon any governmental employment relationship, right? That's correct. Okay, so give me a short definition of what constitutes functional when there's no former and there's no future. I think there are three indicia that are helpful to look at when determining whether someone's acting functionally as a government employee. The first is that there's approval and acquiescence by others in the government to treat him as a functional government employee. The second, that he's able to command government employees to take specific government acts. And the third is that there are some additional indicia and trappings of a government role. So it sounds like that's an effort to break down the concept of political power. I don't think it is, because if someone is merely influential, an influential person can't order specific government actors to take specific government acts. Yeah, but the things you just went through, they don't require that. You said whether there's acquiescence or whether someone follows the authority. I mean, that doesn't require any official responsibilities, right? They just, they go along with it. I disagree with that. I think there needs, the approval and acquiescence inquiry suggests, as we argued in our brief, that both an individual's supervisors and subordinates need to recognize that he's functionally a government official. That's not the same as an individual having influence over one particular member of the government. And I think the facts of this case are actually pretty helpful when trying to look at some of these things. When it comes to approval and acquiescence, petitioner continued to have access to the same meetings, the same building, the same phone, the same secretary that he had. So Ms. Reeves, it strikes me that those are things that insiders might know, very well, you know, probably would know. The problem is that outsiders don't really have any reason to know those things. And an outsider can also be on the hook under this statute, right, for doing the paying. But your test gives the outsider no real notice, does it? No, because the mens rea requirement here and the mens rea requirement that the jury was instructed on also applied to outsiders like Alio. And that required the jury to find that everyone who was convicted knowingly and willfully participated in the scheme to defraud with knowledge of its fraudulent nature, with a specific intent to defraud. And that included specific intent to deceive for the purpose of depriving another of the intangible right of honest services. And the jury was also instructed that good faith on the part of a defendant was a complete defense. So the jury had to find that even the outsiders who paid petitioner here did in fact have this requisite knowledge. And knowledge of him being a functional official in order to convict the outsiders. On this functional official test, you say it's a three part test. And I guess I'm wondering where that comes from. It's certainly not in the text of 1346. Do you have some place you can point me to in the law where that would be an appropriate basis for us to write that into the statute? Skilling indicated that when we're looking at the text of 1346, it's appropriate to look at things like 201, 666, and this court's cases and other cases that predate McNally. And- I understand that, but the functional official test, you said it's a distinct three part test. Where is that in the law? So I think I indicated that those were the sort of things, the three things required to show that someone was functionally a government official. Yeah, where do they come from is my question. I think from a couple of places. One, they're inherent in the nature of being a public official. It's the sort of things we would look at to see whether someone is in fact acting as a public official. The brooding omnipresence of the law. And second, I think if you look at Dixon and its interpretation of 201, the Dixon clearly held that someone doesn't need to be formally a public official or formally an agent. But in Dixon, there was the exercise of official federal responsibilities. I mean, that was part of what the agency had agreed to. So I don't know that Dixon gets you that far, because we don't have official state responsibilities here. So two responses to that. First, Dixon was very explicit that no formal government agency, employment, or delegation was required. And the individual defendants in Dixon were just responsible for administering federal funds. Here, Petitioner actually did a lot more than that. He made employment decisions for the state and made decisions about how much people would be making when they were employed. So that's a funding decision. And he did so with, you may call, it would be an informal approval of his superiors. But he did so with approval of his superiors. And there are a number of facts that indicated it. That, as I mentioned, he had access to a lot of different government meetings and to his office. I think it's notable, this is on page 320 of the JA. He attended an internal government meeting while he was not formally an employee. And that meeting was called by Governor Cuomo. And Governor Cuomo was present at that meeting, which indicates that both his superiors and his inferiors were treating him as actually wielding state authority. Well, given what you just said, let me return to your point about the mens rea requirement when Justice Kagan asked you about that before. Doesn't the knowledge requirement, you said, well, the mens rea of the person on the outside, the outsider, has to know that they were functioning as a public official. So you've offered these indicia and this multi-part test. Justice Gorsuch has pressed you on where it comes from. But it seems to me then your mens rea and the protection of notice requires the outsider to make that functional judgment. How much is too much? Is he really, did they know that he went to the internal government meeting you just referenced? Isn't that a notice problem? A couple of responses on that. First, I don't think Aliyah's conviction is directly at issue here, as this court didn't grant his cert petition, which did tee up these notice of an outsider questions. But just setting that aside, when it comes to the knowledge requirement that was at issue in this case, the jury was instructed that good faith was a complete defense. So if an outsider made a good faith attempt to determine whether someone was functionally a public official and Can I ask you about sentencing guideline 2C1.1, are you familiar with that? Not at the moment, no. Okay, sorry. I'll take it if you read it to me. Well, no, I'm focusing on the fact that that guideline defines public official for the purpose of public corruption in reference to 201. And it seems to suggest that 201 does not cover de facto government employees, because it says that a public official, it puts in one category public officials who are covered by 201, and then it says if they're not otherwise covered by 201, they are subject to the guideline if they participate so substantially in government operations as to possess de facto authority to make a government decision. So at least the sentencing commission saw 201 officials as not including de facto government employees. So as an initial matter, petitioner is not directly covered by 201, because state employees are not directly covered by 201. So you're not going to have any conviction of a state officer under 201. So that portion of the guideline that you've referenced, the latter portion that doesn't refer to 201, is going to cover everyone, I would assume, who is a state or local official who's prosecuted under 1347. But is your position that 201 should be referenced in relation to our consideration of whether a functional government official? Yes, absolutely. But as Justice Gorsuch was pointing out, the statute in 201, its definition of public official doesn't seem to have the three part test or any characteristics that you've described. It just says if someone has been officially informed that they will be nominated or appointed, or if they have been nominated or appointed. And it also includes someone who's an officer, employer, person acting for or on behalf of the United States. And that's the portion that the court was interpreting in Dixon. And that's the portion that's most helpful when looking at whether an individual is a functional government employee. Now, obviously we also think that petitioner's conduct violated section 1346 by reference to 201, because he had been nominated and appointed to be in the position that he eventually took. And I'd also just like to flag that we disagree with petitioner's view of the timeline as to when he was selected to be a public official. Petitioner has said that the corrupt agreement occurred in July 2014, but the only evidence petitioner cites to that effect is that a Leo sent an email to Howe asking for help. As to when petitioner became involved and when there was actually a corrupt agreement, the first indication we have of that is when petitioner received the payments from core development. And those occurred in mid-August 2014 and October 2014. Those acts both occurred after petitioner filed the letter with his bank saying that his employment post-election would be with the Cuomo administration. What do you say about somebody who is a super, super effective lobbyist? So let's say this person is a childhood friend of the person, the elected public official, they played together on the high school football team. This person was the elected official's best man or maid of honor at the wedding, spearheaded the person's political career, campaign manager for every campaign, helped this elected public official out of numerous political scrapes that everybody thought meant the end of the person's political career. Now as a lobbyist, lobbies lots of different public officials, has lots of clients, has a 100% success rate with respect to this public official. There's a concern about having this, interpreting this statute to sweep in lobbying, but would that person be covered in your view? No, and our position in this case has consistently been that mere influence is not enough to trigger 1346. And that's so because even if an individual is influential, even if they're extremely influential over one particular government employee, that person doesn't have the indicia of actually functioning as a government employee. Why not? This town is full of such persons, and presidents have had kitchen cabinets since the beginning of time. And those people are often taken quite seriously in the halls of government, whether they should or not, it's an interesting public policy question. But I would have thought that many of those persons would function as, be functional government officials, is that your phrase? Yes. Under your three part test. Or at least they'd have to have a very long trial to figure out what the answer is. Such an individual doesn't have the approval of both superiors and inferiors that they're actually operating in their own role. Well, let's say he does, that he's in the White House or in the halls of Congress on a regular basis. And people know that he is taken very seriously by the elected official. And that they have to listen to that fellow and do as he says, because they know he speaks for the president or the senator or whatever. And yet, just because someone's very influential, you have to go through these- I know you keep saying they're influential and that's not enough, but why isn't it enough under your three part test? Because a person like that isn't able to- What part of that test do they fail specifically? One, two, three, which portion and why? All three. All three, okay. If you'd allow me to unpack that a little bit. I think the first reason is that the individual, there's no indication from what you said, that this person would have both superiors and inferiors actually treating him as functionally government officials operating in a role. I think second- But that kind of begs the question, right? You're defining the term functional government employee by reference to whether people think he's a functional government employee. That's one component of it, that's not all of it. Normally we don't define things circularly like that, right? It's not circularly, it's one way to get at whether someone is- So let's imagine that there's a situation in which we have a very decentralized form of management in a company. And a bunch of individuals perceive someone to be their boss because all of these indicia meet that. That can be a way to figure out whether they functionally are, in fact, their boss. And that's the sort of thing that we're trying to do here, and that's only one part of it. So people think they are functionally their boss helps define whether they are functionally their boss. It helps if it's sufficient. Okay, and I'm saying check that box here. And what? So then you would need to look at whether he's able to command government employees to take government action. And that's occurred, I think the facts of this case are helpful there because it wasn't just one particular government action. It was a whole variety of government actions and a variety of different government officials. So again, check that box because we have, under Justice Alito's example, a very effective- Now, there's a different- I'd push back on that a little bit because I think that someone can be effective and have a 100% rate without actually being the final say on something and being able to actually command government employees to take government acts. A superior saying, listen to this person, is not the same as a superior saying, implement every single thing this person- Okay, what if we have that, though, because the superior says, do everything my friend says? I think then you'd look at the third portion of this and you'd see if this individual has additional trappings of a government role. Here, Petitioner was able to attend internal government meetings that no one else from outside the government was able to attend. He was able to- he continued to have key card access. He continued to order his former secretary around. He continued to use government phones and offices. And because of this, because of these three things on the facts of this case, Petitioner was operating essentially in the exact same role that he had previously formally held. Thank you. I don't understand the question of whether the person can command government employees to do actions. Only a person who holds official power can actually command a government official to do something. But you draw a distinction between the power to command and the power to influence. But I don't understand where you draw that line, how we determine whether the line is crossed. So, it may be rare that someone outside the government is able to command government action, but on the facts of certain cases, that can happen. And the facts of the case here are a good example of that. You know, the relevant acts for the bribery scheme that occurred in this case happened when Petitioner called the Deputy Director of State Operations and instructed him to reverse the requirement of a labor peace agreement for a contract that Core Development was going to have. You're asking us, I think, to- I'm sorry to interrupt, but I think Justice Alito's question is, you'd have to agree that the defendant here didn't have the legal authority to command anyone when he was out of government. And you're asking for a different test, not whether he is statutorily or legally empowered, but whether a jury could find that he has enough influence to effectuate some governmental action, even though he's not legally empowered to do so. Doesn't that have to be your argument? The question of whether he was legally empowered may be a close question, because it depends on what you conceive legally empowered to mean. Well, I think Justice Alito's point is that only an official government employee has the power to command the resources of the government, okay? Or somebody who's officially employed to make the kinds of decisions, certainly in this case. And I think your argument is, okay, he didn't have legal authority to do that, but everyone thought he did, kind of collapses back into your first point in some ways. I disagree. I think on the facts of this case, he was- He legally was empowered to act as a government official? Whether it was legal or not, he exercised government authority in that case. Sure. As a practical matter, people thought they had to abide his orders, even though maybe legally they didn't. Isn't that really the government's argument? I don't think so. He did have the- he was exercising government authority here. And I think it's similar to a situation in which imagine someone was formally hired as a result of a hiring process that shouldn't have happened. So let's say it was racially biased, and this person should not have been hired. Even if that was inappropriate and legally impermissible, that person is still wielding government authority. He's still an officer of the government in that case, and he has the power invested in him by the government. Now, maybe that should be undone, but during the period in which he holds the office, no one would question that he had the lawful authority to act. So I don't think that example works, because here we're dealing with someone out of government who's not holding an office of the government, right? He's not formally holding an office, but he is functionally holding it. Functionally, because people think he is. And I think you could view it as an improper delegation of authority, but I don't think that that suggests he wasn't actually wielding real government authority. How much does it matter that he is going to return to office? Because your three part test seems to me to sweep in people who, as you've suggested, just overstay their welcome. They're out of office, but they keep the same key card, and they're in the same office, and they have the same secretary. And it seems to me that a person like that would still be covered under your three part test. So does it matter that the person is planning to return? I think there could be a conviction under the functional theory without someone planning to return to office. But on the facts of this case, it's certainly helpful that he was planning to return to the same office. But how do you distinguish that person from a lobbyist? Lots of people leave their former employment. Maybe their key card hasn't been turned off yet. They continue to engage in relations with people that they formerly worked with. I'm worried, I thought part of your test, or the way in which we were to think about functionality, was that as your opposing counsel suggested, there's something about the person coming back or trading on their potential future influence. But if the person is just sort of lingering as a result of their former engagement, why isn't that just a lobbyist? So someone who's lingering still would need to not just be doing some one-off things or be remaining influential. He would still need to be functioning in his entirety as a government officer and would still need to meet these three requirements. It's certainly helpful. And the court doesn't need to get into that hypothetical because the petitioner here was planning to return to office. So it's certainly helpful if they're planning to return. But we're trying to figure out the test. And I guess what suddenly makes me a little concerned is we're talking about bribery. And opposing counsel says you really do have to be in a world in which you are trading on your actual influence. And maybe it's going to happen in the future and that's a part of the scheme. But if it's not going to happen in the future and it can't happen in the present because you're not actually an official, then what really is the basis for a 1346 conviction? I think it's that an individual at the time that the bribery scheme occurs, not before, not after, is functioning as a government official and that individuals who are superiors, inferiors are continuing to treat him as such. He's able to make actual commands for government actions to occur. It strikes me that the strongest part of your case is the fact that this is a guy who was a former government official and who will be a former government official. And this is just this little hiatus that he's taken. And not even to go into private service, but to go into sort of the governor's private service, right? So that, I mean, that's the strongest part of your case. But you're proposing a test which, as the Chief Justice suggested, doesn't need to have any of that. You don't have to be a former official. You don't need to be a future official. And I guess what I would like to know is, can you give me a hypothetical of a person who is not a former official and who is not a future official, so doesn't have those periods of real status-based control, who is going to meet your test? And what kind of person would that be? Because then it seems to me, I mean, you know, I'll give the point of the question away. I don't think you can give me that test without making it look like the guy's just a really, really good lobbyist. I think, imagine that the governor took someone who hadn't formerly worked for him and said, I am going to treat this person as the equivalent of my deputy executive secretary. Not going to pay him, but in every other way, he will hold this office. In every other way, he will speak to me. In every other way, you're required to follow his commands. And he gives full access. Okay, I think Mr. Roth would say that's an agent. All right, I mean, because Mr. Roth has a way to deal with that. He says, you know, you don't have to be like on the books if there's been that clear a delegation from the principal. So I think that person still would also fit under our test. And I think there's enough evidence in this case for the jury to infer that petitioner had had that sort of delegation. You know, it's not explicit, but there are indicia throughout this case that petitioner was just acting in the role in this case that he had previously formally held. So, please tell me why it can't be simply an agent? Meaning, why can't we just simply, instead of this functional, whatever, government official, or reliance and control as the second circuit called it. Why can't the charge be something as simple as, are you acting as an agent? So, I think this court would have to overrule Dixon in order to say that. Because Dixon explicitly said that no formal bond, such as an agency relationship, an employment contract, or a direct contractual obligation is required. Well, I'm not sure, 666 says you could be an agent of a state, or an agent of a government. So, how did you charge 666, or was the jury right in acquitting on 666? So, as Justice Alito previously said, this court has repeatedly indicated that an acquittal on one count doesn't fall into question. I don't want to go to that, I'm asking you a simple question. I believe we did charge that on an agency relationship. Thank you, counsel. Given the arguments in your brief, and your argument this morning, is it fair to say that US attorneys around the country should not be invoking United States versus Margiotta anymore? I think, as we've mentioned, I don't think the court needs to decide whether Margiotta is, in fact, good law. And we've repeatedly litigated this case as saying it doesn't go that far. Well, that's kind of the big, I don't want to say elephant in the room, but it's kind of been a big focus in this area. And you cited a grand total of two times in your brief, each time, to say, don't worry, this isn't Margiotta. So, I think that the bottom line decision in Margiotta, that he had, in fact, violated 1346, is correct under a proper interpretation. But I think some of the language in Margiotta is too broad. The jury instructions there were not even a reliance and control jury instruction. They were much looser. And to the extent that decision suggests that prestige alone is enough, we would agree that that's not enough. Although the jury instructions here, which again, weren't the same as the jury instructions in Margiotta, did go far enough under our current view. Thank you. Justice Thomas? Justice Alito? Justice O'Mara? They went far enough? The jury instructions here went far enough, yes. Yeah, for you to win. But that's not the question. The question is, did they reflect Margiotta's broad theory? No, they did not. Not in the context of this case. The jury here was instructed that Petitioner had to dominate and control a governmental business. That's not dominate and control an individual. That's dominate and control a governmental business. And also that people in the government actually relied on him because of a special relationship he had with the government. And that mere influence and participation in the process of the government standing alone are not enough to impose a fiduciary duty. So is your functional government official test any different than the Second Circuit's reliance and control test as set out in Margiotta? Again, I just want to emphasize that the reliance and control test was, while the court in Margiotta referenced reliance and control, that is not the test that the jury applied in that case. That's just some loose language itself in Margiotta. Was that language used in the jury instruction here? Some of it was. And as I just laid out, the jury instructions, we believe those correctly reflect the functional test. Yeah, you're cherry-picking. No, I'm not. Meaning, does the instruction as a whole reflect the reliance and control theory that you're disavowing in Margiotta? It does not. All right. I can read it myself and see. Justice Kagan? Where's it? Justice Kavanaugh? One of your hypotheticals in your opening was about a pending cabinet nominee who's bribed to withdraw pending regulations. I understand the other side to say that would qualify so long as it was an action intended to have the pending cabinet nominee withdraw those regulations upon assuming office. So how would it happen under your hypothetical that the pending nominee could even accomplish that? I assume you chose that hypothetical of care. I'm trying to figure out how that would even work. So that's obviously a reference to 201 and an individual who's been selected to be a public official. And the text of 201 clearly indicates that an individual who's just been selected or appointed to be one, by that very nature of that appointment or selection, is carrying some authority that in some situations may be wielded to take an official act before the individual actually joins government. So if that cabinet official, while the nomination was pending, all these acts occur, were to call up the agency and say, I'm about to be your boss. I want these regulations withdrawn today before I formally take the role. That would be a 201 violation, as we understand it, and a 1346 violation if a state official is to do that. In the real world, wouldn't the recipient of that call say, you're not in office yet? I don't. I mean, that's at least how my understanding of government works. I guess you're proposing a scenario where that. Yes, I am proposing a scenario where the individual obeyed that person's command, which is the scenario that occurred in this case. I understand that. I'm just trying to figure out that hypothetical and how that would work. Thank you. Justice Barrett? Justice Jackson? Just to follow up on what Justice Kavanaugh was exploring with you. Wouldn't it have to be a situation in which the person says, I've been nominated to this position and the scheme is that once I get into office, I will order that the regulations be removed. I'd understood that opposing counsel was saying that that would be covered under 201. And isn't that the kind of thing that 201 is contemplating? So that would be covered by 201, but our reading of 201 is broader to include even if all the acts and threats and the official action occurred before the individual formally joined government office. And what is that based on? Why is your reading of 201 that broad? So 201 just on its text provides that an individual who's selected to be a public official can take official acts. I think that section B2A is probably the best indication of that, that a person selected to be a public official can be influenced in the performance of an official act. And if Congress had wanted to just address the type of situation that you've thrown out after that an individual could only commit the official act after they were formally in government employment. It wouldn't have had the need to engage in this whole scheme of separately defining a person selected to be a public official and separately covering them. Without in any way suggesting that the official act couldn't occur until the individual- When you talk about Congress's intent, wasn't there a situation in which Congress considered a bill that had a broader definition of public official to include the kind of things you're talking about and they rejected it? So I think you might be discussing the Anti-Public Corruption Act, which was legislation that was introduced before 1346 itself was introduced. I think the fact that that legislation didn't go anywhere, I don't think, particularly since it predated 1346, doesn't in any way suggest that 1346 should be read more narrowly than McNally and what 201 and 666 suggest. Thank you. Rebuttal, Mr. Roth? Thank you. Just a few quick points. First, counsel tried to avoid the issue of Aiello's knowledge by saying his conviction is not before the court. But the conviction that is before the court is a conspiracy count that requires a meeting of the minds on an unlawful objective. And if Aiello didn't know the facts that apparently made this person a public official, then the conspiracy count doesn't work. Second point, counsel tried to avoid some of the hypotheticals by saying, well, mere influence is not enough. It's got to rise to this higher level. And the instructions did say mere influence is not enough. The problem is, I don't know what that means. I don't understand where that line is between mere influence and the ability to get something done by making a call or making a request. And that's exactly the vagueness problem that Judge Winter talked about back in Margiotta. And then the final thing I would say, and this I think is probably the most important, counsel said that when Congress enacted Section 1346, it was trying to reinstate the pre-McNally case law. But of course, Skilling said that if you read it that way, then it creates a vagueness problem. Because the pre-McNally case law was inconsistent on numerous points. And Justice Scalia said it was in chaos. I mean, there was a lot of confusion about what the pre-McNally case law did. And so what Skilling said was, in order to avoid that problem, we've got to read the statute as limited to its core, which it defined as bribery and kickbacks. And then said, in order to figure out what bribery and kickbacks are, we can look at the statutes that we have on the books that define those, specifically Section 666 and Section 201. But the government can't point to a single case under either 666 or 201 that gets anywhere close to the theory that they are proposing here. On 666, they concede it requires agency, and there was no agency theory pressed on this count. And then on 201, the best they can do is Dixon. I would just read from Dixon. I mean, Dixon said, to be a public official under Section 201, an individual must possess some degree of official responsibility for carrying out a federal program or policy. And then it said that in that particular case, when one examines the structure of the program and sees that the act vests in local administrators like petitioners the power to allocate federal fiscal resources and so on. It's clear that they are public officials. I mean, that's not what we have here. And so, because the government can't point to anything in the pre-McNally case law that remotely resembles a consensus. They can't point to anything under 666, and their best example under 201 doesn't get them close. I don't think the conviction can withstand scrutiny. If there are no further questions, thank you, Your Honors. Thank you, counsel. The case is submitted.